Norma J. BELL, Executrix, Plaintiff

v.

CONSOLIDATED RAIL
CORPORATION,
Defendant

No. 99–7106.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 23, 2004.

Erwin J. Leizerman, Michael J. Leizerman, E.J. Leizerman & Associates, Toledo, OH, for Norma Bell, Executrix of Estate of Decedent, Roger Bell, Brandi LaCourse, Ryan Bell, Lori Bell, Bryan Bell, Nichole Bell, Kristopher Bell, Plaintiffs.

Garrick O. White, Anspach, Meeks & Nunn, Toledo, OH, Richard F. Ellenberger, Anspach, Meeks & Nunn, L.L.P., Toledo, OH, for Consolidated Rail Corporation, Defendant.

## ORDER

CARR, District Judge.

This is a wrongful death FELA action arising from collision at about 1:30 a.m. on January 17, 1999, between a train in which plaintiff's decedent, Roger Bell, was the engineer and a train ahead of Bell's train. Bell and the conductor on the train with him, Ray Cottrell, were killed in the accident.

Pending is the plaintiff's motion for partial summary judgment. For the reasons that follow, the motion shall be denied.

Bell's train was traveling about fifty-six miles an hour when it struck the train ahead of it, which had just begun to get underway, and had reached a speed of about eight miles per hour, after having stopped in response to a signal that it do so. About a quarter mile before the point of impact, Bell's train had failed to comply with a red signal, which required the train to "stop and proceed" (i.e., to stop and then proceed at a speed of not more than fifteen miles per hour, being prepared to stop short of any obstruction). About three miles earlier, Bell's train had passed a yellow signal, which required the train to reduce speed to no more than thirty miles per hour, preparing to stop short of the next signal (which was, as noted, red). Through both signals until the collision, the train maintained a speed of fifty-six miles per hour.

In the suit brought by Cottrell's estate, Bell has been found to have been per se negligent for his failure to obey the signals.

Bell's estate contends that, any negligence on his part notwithstanding, Conrail is liable to the estate, and is entitled to partial summary judgment on the issue of liability. According to plaintiff, the weather conditions (namely extremely thick fog and icing conditions), coupled with the unsafe condition of the locomotive, caused Bell to fail to see the signals. The plaintiff rests her case on alleged violations of the Locomotive Inspection Act (LIA), 49 U.S.C. § 20701, which, plaintiff contends, imposes an absolute duty on railroads to provide a train's crew with equipment that is in proper operating condition, and enables safe operation of the train.

Plaintiff contends that Conrail breached its duty under the LIA in three respects: 1) the locomotive's defrosters were not operating properly; 2) Cottrell's radio was inoperable; and 3) Bell's radio did not have a handset. One or more of these conditions caused the collision, plaintiff contends, because: 1) ice that would have formed on the windshield would not have been dissipated by the defrosters, thus further reducing the crew's ability to see the signals, which already was impaired severely by fog; 2) Cottrell had to use the radio on Bell's side of the locomotive, thereby creating a distraction for Bell and interfering with his ability to concentrate and watch for the signals; and 3) if Bell needed to use the radio, he would have to stand while doing so, thereby further distracting him and restricting his field of view. Plaintiff also contends that Conrail was negligent when its dispatcher failed to warn Bell and Cottrell about the conditions they would encounter west of Toledo.

As proof that the defrosters were not operating properly, plaintiff submits affidavits by the engineer, Walter Cross, and conductor, John Verterano, who had brought the train from Conway, Pennsylvania, to Toledo, where they handed it over to Bell and Cottrell. According to those affidavits, the defrosters had not been working en route to Toledo. As a result, according to Cross, he could see "next to nothing." Verterano's affidavit states that, due to the weather conditions and inoperable defrosters, he could "at times" "not see beyond the nose of the engine."

In opposition to these affidavits, Conrail points out that the National Transportation Safety Board, which investigated the accident, found that none of the four crews that handled the train (including Cross and Verterano) reported any problems with the train. In addition, Conrail submits written statements given by Cross and Verterano to the NTSB. Cross reported that "There were no exceptions. The air brake tested and operated normally, and all safety devices functioned as intended." In addition, Cross's NTSB statement stated, "As far as I am concerned there were no exceptions in regards to the outbound crew. Both men were conversant as to the condition of the train."

Verterano's statement said that the train "was good to go" when he took it over. "The only thing that I can think of," he stated, "is the radio on my side did not work."

■ The NTSB finding of no reports of problems, coupled with these statements,[1]

---

1. Plaintiff has filed a motion to strike, inter alia, the handwritten statements by Cross and Vererano. The statements, while probably not admissible for the truth of the matter asserted, can be considered by the jury as having been made, and as inconsistent with the declarants' later-submitted affidavits.

*See, e.g., Firemen's Fund Ins. Co. v. Thien,* 8 F.3d 1307, 1311 (8th Cir.1993) (noting that a prior inconsistent statement may be admissible under Fed.R.Evid. 613(b) for impeachment purposes, but not for the truth of the matter contained therein).

raise sufficient doubt about the veracity of the affidavits to create a genuine issue of material fact. To be sure the affiants assert unequivocally that the defrosters were not working and their visibility consequently was very limited. As a general rule, the possibility that the jury might disbelieve a witness "is not [normally] considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). This approach implements the requirement of Fed.R.Civ.P. 56(e) that a party must come forward with evidence sufficient to raise a genuine issue of material fact to avoid summary judgment. Simply asserting that the movant's witnesses are not credible is not enough.

But, as the authors of a leading treatise point out, "Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and *specific bases for possible impeachment are shown,* summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact". 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2726 (emphasis supplied).

The credibility of the contentions about malfunctioning of the defrosters—made for the first time five years after the accident—is undercut by the fact that, a few days after the accident, neither of the affiants nor any other employee who had been on that locomotive during its trip mentioned that condition or other limitations, except for fog, on visibility.

Nor, apparently, did either of the affiants warn their fellow employees of any dangerous condition or problems operating the train due to weather or otherwise. The affiants' failure to provide such information, or information about out-of-order defrosters, to Bell and Cottrell that evening or to the NTSB later casts a sufficiently dark shadow over the believability of their current contentions to entitle the railroad to have those assertions tested before a jury.

■ Nor is plaintiff entitled to summary judgment with regard to her contentions concerning the radios. There is no evidence of transmissions to or from the train after it left Toledo. Thus, the fact that Cottrell's radio was not working could not have been a cause of the accident. Likewise, absent proof of use of the radio on Bell's side of the train, there is no basis for concluding that either Cottrell had intruded into Bell's space (as plaintiff contends would have occurred if Cottrell had to use Bell's radio) or that Bell's visibility was further reduced as he stood to use his radio.

■ Finally, plaintiff has not shown that the dispatcher had a duty to inform the trainmen about conditions of which they were, or could have been, aware. They knew best what they could, and what they could not see, and to respond accordingly. The regulation on which plaintiff bases her contention about the dispatcher's negligence by its own terms imposes a duty on employees to report to the control center—not vis-a-versa. 49 CFR § 220.

In light of the foregoing it is

ORDERED THAT plaintiff's motion for summary judgment be, and the same hereby is overruled.

So ordered.